JAMES W. DRYSDALL v. HARLAN P. SMITH.

*Rescinded sale—Evidence of profits—Unprejudicial error.*

S. sold D. as much timber as D. should take away before a certain date, but before that time sold the land without reservation to M. and agreed to settle with D. who presented a claim for the amount he had

paid and for getting out the timber. S. did not pay however,' and D. sued him. *Held* (1), that the action was not based on the contract of sale, but the later transactions. to which the contract and the deed to M. were mere matters of inducement, and it was for the jury to determine whether D.'s claim was well founded; (2), that it was not material whether or not he had notice of the sale; (3), that as D. recalled the price he had paid and claimed payment for his outlays, he could not show what profits he might have made.

Where evidence improperly admitted is evidently not considered by the jury, the error does not require a reversal of judgment.

Error to Saginaw.    Submitted June 11.    Decided June 23.

ASSUMPSIT.    Plaintiff brings error.    Reversed.

*Albert Trask* for plaintiff in error.

*Camp & Brooks* for defendant in error.

GRAVES, J.    Drysdall recovered judgment before a justice and the circuit court reversed it on *certiorari*, and on that reversal this writ of error is brought.

February 21, 1879, the defendant in error, by writing under his hand and in consideration of $100 then paid to him by Drysdall, sold to the latter so much of the oak, ash and basswood, not less than twelve inches on the stump, as he might remove from the south-west quarter of section 34 in township 11 north of range 2 east between the date mentioned and April 1, 1880.

March 21, 1880, Smith conveyed the premises, by warranty deed, to James C. McInnis, and there was no mention in the deed of the transaction with Drysdall. About the first of October following Drysdall found out that the land had been conveyed without making an exception of the timber, and he proceeded to talk with Smith about it. The latter explained that it was a mistake and that he would fix it, and according to Drysdall's claim which Smith does not deny, the latter told him to go upon the land and cut timber and make roads, etc., so as to give notice to the world that he was in possession; that he accordingly went on the land about the 12th of October, and proceeded to cut roads and carry on lumbering ope-

rations and continued doing so until McInnis notified him that he claimed to be owner of the timber, and proposed to sell it; that subsequently one Carl claimed to own the timber and notified him to stop cutting; that he then called on Smith again, who told him he had written him as to what he would do, and on returning home he found Smith's letter which was in these terms:

"East Saginaw, Mich., Nov. 5, 1879.

*J. W. Drysdall, Esq., St. Charles, Mich.*

Dear Sir: Your postal card is received. I do not want you to take any risk on my account, or to expend any more money or labor on the timber with a view of looking to me for indemnity. I am prepared and ready to pay the damages at this time, and will do so if it cannot be arranged in some other way that will suit you better.

Please deliver the enclosed to McInnis, after you have read it, and notify me what you want."

Smith claims that Drysdall had asked him to become responsible for advances to furnish his camp with provisions, and that it was to that he had reference in this letter. Drysdall made an itemized statement of what he "wanted" and presented it to Smith in compliance with the suggestions in the letter. It covered the $100 paid as consideration, and in addition thereto, $159.27 charged for work and expenses performed and incurred pursuant to Smith's directions to go on and make roads and commence lumbering, etc. He claims that Smith agreed to pay the amount if he would subscribe a writing then made by Smith on the back of the statement, and that he then consented and in fact signed that writing, but that Smith immediately placed the paper in his desk and refused to pay; that Smith then agreed however to call in a few days and pay the amount in case he was not able to arrange the matter with McInnis so that he, Drysdall, could have the timber, and that Smith accordingly did endeavor to get an adjustment which would enable him to have it, but was unable to make any. Smith does not deny this explanation any further than this: He says he did not agree to pay the amount of the bill or any amount whatever; that he never

intended to have the plaintiff understand that he would pay anything more than he was legally bound to pay.

Now it is important to observe that the plaintiff based his action on these transactions which grew out of the contract to sell the timber, and the conveyance by Smith to McInnis, and not on the breach, if there was one, of the contract of sale itself. That contract, together with the grant to McInnis, were mere matters of inducement. The parties assumed that a breach of the contract of sale had been caused by the deed to McInnis, and the plaintiff thereupon, at the request of defendant, made an amount of expense which, as plaintiff claims, the defendant agreed to pay together with the purchase price of the timber. Whether this claim was well or ill based was for the jury.

The case presents two questions, and they arise upon rulings made by the justice in excluding and admitting evidence. *First.* The court refused to allow evidence that McInnis had notice at the time he received the deed, that the timber had been sold to plaintiff. The reasons given for the ruling are of no importance. The purpose of the proof was to show that in point of law McInnis, the grantee of Smith, was not in a position to enable him to defeat the sale of the timber. But this was not material to the issue. The cause of action did not turn upon that hinge. Whether the plaintiff, in a controversy with McInnis, might or might not have held the timber, the right growing out of the new arrangement would not be changed. *Second.* The plaintiff was allowed to testify that if he had obtained the timber he would have made a profit of at least $100 and probably three or four hundred. It is very plain that this evidence was not consistent with the theory of the case. It was not competent to claim profits and at the same time recall the price paid for the materials and insist on payment of all the outlay.

But the record satisfactorily shows that the defendant was not prejudiced. The jury allowed only $209.27, and it seems plain on inspecting the items of the claim and other features of the case, that nothing was given for profits. The bill the plaintiff rendered to the defendant, and which specified the

particulars of the claim, was, as previously stated, for $259.27, and it contained no charge for profits. On the occasion on which it was rendered the defendant gave to the plaintiff $50 as a temporary expedient and under a special understanding concerning its application, and it is only necessary to deduct this money from the plaintiff's bill to obtain the exact amount found by the jury. They evidently confined their verdict to that claim, after deducting the $50 as payment, and as it embraced nothing for profits none were allowed. It follows that the rulings by the justice were not such as to impugn his judgment.

The determination of the circuit court must be reversed with costs and the judgment of the justice affirmed.

The other Justices concurred.